Good morning, Your Honors. May it please the Court, I am Rachel Moran, and I represent the appellant, Melvin Washington. Your Honors, Mr. Washington was 17 years old when he faced a charge of first-degree murder and a future of effectively life in prison. He should have received a fair trial by an impartial jury. Instead, Mr. Washington received a jury handicapped by ignorance of relevant law and facts, and prejudiced by a lower court obviously displeased with defense counsel's theory and tactics. Did Mr. Urban try the initial case that's been retried? No, Your Honor. The initial case was tried by Bill Wolfe, an assistant public defender. And the retrial, was it tried by Mr. Urban? No, Your Honor. So Mr. Urban didn't represent the defendant in either case? That's correct, Your Honor. This Court should deny Mr. Washington's request of jury instructions. Second, the Court repeatedly precluded impeachment of critical state witnesses. And third, the Court's sui sponte objections and open impatience with defense counsel deny Mr. Washington his right to an impartial trial effect. Turning to the first point, Your Honors, the Court below abused its discretion in denying Mr. Washington's request for two jury instructions, second-degree murder and involuntary manslaughter. As the Illinois Supreme Court stated in People v. Jones, it is well settled that as long as there is some evidence for a request of jury instruction, the defendant is entitled to that instruction. And refusal to provide it is reversible error. What was reckless about shooting this guy when your client testified he was impaired for his life? Your Honor, there are two situations. Our position is certainly that it was justified self-defense. However, the jury could have found that it was reckless in one of two instances. The physical evidence is important in this case. Ronald Lee was shot twice in his arm and once in his side. Mr. Washington testified that he was not shooting to kill. He was shooting to disarm. And the physical evidence Kind of like Dick Tracy. He can do that. Your Honor, the physical evidence corroborates his testimony. It's for the jury to decide. But what's reckless about that? I'm shooting the man who's trying to shoot me. I'm such a good shot, I can shoot the gun out of his hand. That's not reckless. That's excellent shooting. I mean, it's phenomenally good shooting. That's purposeful, wonderful, and the NRA should have this guy as a poster boy. So what's reckless about that? Your Honor, under the definition of involuntary manslaughter, it's reckless if he is not justified in shooting, but he has no intent to kill. That would be the situation here. If the jury decided that he is not justified in shooting, if he doesn't intend to kill, it could be involuntary manslaughter? Yes, Your Honor. Under 720 ILCS 5-9-3, a person who unintentionally kills an individual without logical justification commits involuntary manslaughter if his acts which cause the death are such as are likely to cause death or great bodily harm and he performs them recklessly. But it's not recklessly. You can argue. But your argument is it was recklessly. What he did was, even though his testimony was, I shot the guy in the arms and he kept going, so I shot him in the chest and he died. That is still reckless, right? If he does not intend to kill, Your Honor, by definition, by the statute. Well, if he performs the acts recklessly. So either you're an excellent shot, which apparently he is, and I mean it, or he's reckless. Okay, go ahead. That's just a minor. Your Honor, the jury could also find that he was acting, that he was not justified, but that this was second degree murder. This Court and the Supreme Court has repeatedly held that it is for the trier of fact alone, in this case the jury, to determine whether someone's belief that he was justified is reasonable or not. Here Mr. Washington unequivocally testified that he did fear for his life and he did shoot in response to that fear because he believed Ronald Lee was going to shoot him first. If the jury rejected the reasonableness of that belief, it was their job to determine if they did believe that that was a subjective belief but it was not reasonable, that's second degree murder. This Court denied the jury the opportunity to make that decision, which is in their hands alone, by refusing the instruction. The Court cited Anderson, but before we get to that, you opened up by saying that your position, that your client was acting in self-defense. And that certainly was a position at trial, no question about it, and the Court brought it to the point where the Court agreed that the jury was entitled to a self-defense instruction. And as you say, what we would call in the business a black letter law thing, if you give self-defense, you're supposed to give second degree. But then the Court relied on a case called Anderson, written by one of our brighter lights, if not the brightest light, Joe Gordon. But going back, you also mentioned that your position here is he's not guilty by self-defense and I don't see a reasonable doubt argument. Am I missing something? Your Honor, no, there is not a reasonable doubt argument here. So let's go back to what, so Judge Cannon then follows Joe Gordon, citing Anderson in her reasoning. Why shouldn't we agree with Joe Gordon? Two reasons, Your Honor. First, the case has been twice criticized since that by both People v. Tony and People v. Edmondson, which are cases out of this Court and that are more recent than Anderson. And secondly, the case is also factually incredibly different than, what we have here is different than Anderson. In Anderson, we have three state witnesses who testified that they saw the defendant essentially walk up unprovoked and shoot two people, one in the back of the head, another in the head. There was no testimony of any provocation at all except for the defendant who told a completely different story. Here we have up to 200 people, some of the state witnesses testified that there was a number of people around him. Ronald Lee had just grabbed him, choked him, was screaming profanities at him. This is much more of a situation where there could be an unreasonable belief than in Anderson. Anderson is distinguishable on its facts regardless of what the Court thinks about the legal basis behind it. Turning to the second point, Your Honors, the Court repeatedly precluded impeachment of state witnesses. And it's important to note, Your Honor, this was essentially a credibility contest between the witnesses. There were, all of the state's witnesses were family members of the alleged victim in this case. The defense witnesses had two family members and then one impartial. The only impartial eyewitness in this case was a neighbor who knew neither of the parties. When the decision is based on who, almost exclusively, the decision of guilt or acquittal in this case is based almost completely on who the jury believes, the Court should have given the defense the opportunity to ask questions about the reasons that these witnesses had for motive, bias, and interest in testifying. I should note this is de novo review, Your Honor, because this creates constitutional issues. This speaks to Mr. Washington's Sixth Amendment right to confront the witnesses against him. Ronald and Donald Lee were the two witnesses whose credibility was most at stake in this case, and also the man that Melvin Washington testified had a gun on him that night. Ronald Lee, although the fact of his prior conviction was brought out before the jury, the fact that he was on parole was not. This Court has repeatedly stated, and most recently in Lockett, People v. Lockett, that the trial court should, and I quote, give great latitude in allowing, in questioning a witness regarding his parole status, because that is relevant to his bias, his motive, and his interest in testifying. The Court denied any questions whatsoever about Ronald Lee's parole status. The jury never heard that at all. And when did Mr. Lee come forward after the shooting? Immediately, Your Honor. He was shot, and so he was shot. I'm sorry, I'm getting my witnesses mixed up. Donald, if Your Honor is referencing Donald Lee, Donald Lee did not come forward until approximately three years after the shooting. Thank you. Your Honor, as far as Ronald Lee goes, however, not only the parole status, but the Court also refused to allow defense counsel to ask questions, for example, on whether Ronald Lee owned a gun, whether he used a gun, his familiarity with guns. Those are all matters that are relevant to his motive and interest in testifying. It's not everybody, though. I mean, you get to the point, if you go to a movie, you're familiar with what the difference is. And the difference here was the difference between a revolver or a semi-automatic. I mean, five-year-olds know that. You'll see a Terminator movie. Everybody knows that. Does that indicate, though, actually, that if you knew the difference between a semi-automatic and a revolver, that that somehow implicates you in that you have experience in having a firearm? Your Honor, certainly the level of his experience and the question of whether it was illegal for him to use a gun, those would have been relevant to his motive and interest in testifying. The Court refused to allow defense counsel even to ask that, whether it was illegal for Ronald Lee to have a gun that day. But he'd be asking the guy on parole, right? But the jury did not know he was on parole, Your Honor. Right. But the complaints, the prejudice you're complaining about in that area is that your client was somehow harmed by the fact that the parolee was not allowed to be asked, you're not allowed to have a gun on you, right? Your Honor, my client was harmed when the witnesses were essentially sanitized in front of the jury. You know, you went on for facts, I think, about 19 pages, and your adversary went on about 34 pages, so I might have missed something, but the way I look at it, you just said a hundred people were around, and your client shot three times into what was a crowd. And then he hit, in fact, the real victim, the deceased. What significance do you think that plays? I couldn't see it laid out in the facts, it just bothered me. Certainly, Your Honor. The significance, it's obviously extremely unfortunate that someone else died in this situation. But if Mr. Washington was justified in firing those initial shots, the fact that he unfortunately, that someone else died as a result is not imputable to him. Turning back to the involuntary manslaughter question, though, if the jury determined that it was reckless because there was a crowd around, then that would have been the appropriate finding. And again, the jury was not able to make that determination because the judge denied them that instruction at all. And so the fact that there was a crowd perhaps leans to the fact that this could be an involuntary manslaughter case rather than a first-degree murder if the jury had had the proper instructions. Your Honor, turning back to Ronald Lee, however, the court also denied a Lynch motion on Ronald Lee. The Supreme Court in People v. Lynch stated that evidence of an alleged, in a self-defense case, evidence of an alleged victim's violent past is relevant to show propensity for violence in the case at issue. Here, Ronald Lee is a man who the defense had a witness prepared to testify that Ronald Lee hijacked her vehicle, held her hostage along with another person at gunpoint in her vehicle, and then was prepared to testify to that. And the judge decided that that was not relevant. Certainly in the question of a 17-year-old person with no prior convictions versus an alleged victim who has this kind of past, it would have been relevant for the jury to hear this information. Again, Ronald Lee was sanitized because that information was never brought before the jury. Turning to Donald Lee, Your Honor, Donald Lee is another one of the state eyewitnesses, one of the people who testified that Ronald Lee did not have a gun. At the first mistrial in Melvin Washington's case, Donald Lee admitted that he'd had three or four beers and cocktails and was under the influence that day. At the second trial, at the trial were here before him, Donald Lee testified that he'd had two beers at most and was not under the influence. Your Honor, that's clear impeachment. When defense counsel attempted to impeach, the court sua sponte objected and not only prevented counsel from going into it, but said in front of the jury, there's no impeachment, you know there's no impeachment. Donald Lee also had a drug problem. He admitted to having undergone drug treatment in the recent past and at the mistrial he admitted that he'd had, and I quote, alcohol problem on and off for quite a while. None of that was allowed in this trial. They were, defense counsel was not allowed to question Mr. Lee to impeach him on his alcohol use the day of the incident. He was not allowed to ask him about his alcohol abuse problems and he was not allowed to ask him about his drug abuse or drug treatment. In People v. Triplett, the Supreme Court condemned the trial where the judge's rulings exposed the jury to a small portion of reality. That's what happened here, Your Honors. The jury was exposed to, at best, a small portion of reality with respect to some of the state's eyewitnesses. And because of that, the judge essentially, knowingly or not, obstructed the jury's understanding of both the law and the facts and denied Mr. Washington his constitutional right to cross-examine the witnesses. Finally, Your Honor, the judge's sua sponte objections and commentary did serve to prejudice the jury in this case. The cumulative effect of all of the judge's commentary, in a situation where the evidence was close and the jury was already denied understanding of who the witnesses really were and what their background was, in this situation the judge's comments become all the more relevant. And I'll just bring up a few. In front of the jury, after defense witness Topeka Washington testified, the judge stated in front of the jury, I don't know why we called her as a witness. The judge said there's no impeachment. You know there's no impeachment. The judge interrupted defense counsel during the middle of one of counsel's cross and called for a recess and turned to the jury and said, I'm sorry, this isn't moving as fast as we'd like. And just sent the jury home for the day. Your Honor, at 3.30 p.m. on a Thursday after the state had had four days for its case. Excuse me, counsel. How are those comments about how quickly the court is moving, letting the jury know that she wishes to be expeditious and not waste their time, how is that a problem for your client? Where does the judge go wrong? Your Honor, it's a problem when the defense is treated very differently and when the impatient is aimed only at the defense. Perhaps the most relevant, or the most telling information here, to that respect, is that after the state had had four days and 14 witnesses for its case in chief and after the court had never once cut them off, the state rested at 3.30 p.m. on a Thursday. The judge called for a sidebar and then told the defense, okay, we're finishing today, we're finishing today. Defense counsel responded that he couldn't and he had upped as many as eight witnesses to call in the remaining hour and a half and that wouldn't be feasible. The judge says, I don't care, we're finishing today. Why can't you finish today? Was that in your brief? Yes, it is, Your Honor. In section 3B, I believe, Your Honor. After that happened, the parties returned, the defense had approximately an hour to an hour and a half to put on its case in chief, and then the judge, knowing that defense counsel could not finish, was not finished with its case in chief, still asked in front of the jury, defense, are we done? When the defense counsel responded no, the judge turned to the jury and said, unfortunately, this is taking longer than I expected. And so the judge allowed the defense to keep putting the case on? Yes, Your Honor, but the overall, the impression it imparted is that this is taking too long. Why don't we just finish this? There's no need for the defense's case in chief. That's the impression? That's the impression from your vantage point. Your Honor, I would submit that that's the impression the jury received. The Supreme Court in People v. Brown stated that a trial judge has a duty to avoid conveying improper impressions. And the cumulative effect of all these comments and the sua sponte objections, Your Honor, that were aimed, again, only at defense counsel, never at the prosecutors, the cumulative effect of that was an improper impression. Thank you, Your Honor. Just briefly, shortly before the trial, the defendant became aware of some sort of another family argument? Yes, sir. Do you want to comment briefly on this? Absolutely, Your Honor. Very quickly. The trial was scheduled to begin on a Friday. That morning, the record is unclear as to what time, but that morning, the state tendered police reports indicating that one of the state's witnesses, Antoine Lee, was a suspect in a shooting incident against Mr. Washington's girlfriend. And Lee is the mother of? Antoine Lee was the initial car accident victim in this case, and one of the people who testified about the shooting incident. Antoine Lee is the man who, according to police reports, was suspected of, just a couple weeks earlier, shooting at the defendant's girlfriend. This is relevant because it was a family feud, particularly, Your Honor. Certainly, the court could have allowed just a one-working-day continuance. That's all the defense was requesting. The court denied that. But they were given time. The defense was given some time. The defense was given, it's unclear again from the record, some time during that day to attempt to investigate. The defense said it would not take very long. It requested a one-working-day continuance, and the judge, without going into any of the statutory reasons for denial. And was that preserved in the record, then? Yes, it was, Your Honor. It was objected to, then, and raised in the motion for new trial. Thank you. Thank you, Your Honor. Any other questions? No questions. Thank you.  Proceed, counsel. May it please the Court. I'm Assistant State's Attorney at Law. Could you keep your voice up? I'm a little impaired that way. On behalf of the people of the State of Illinois, in this case, defendant received a fair trial before an impartial jury and an impartial trier of fact. The people maintain that the court properly exercised its discretion in denying the defendant's motion for continuance, ruling on various evidentiary matters, and in its instructions to the jury. Defendant's arguments that the trial court was somehow biased in its ruling, or that the defendant was disparately treated, are also without merit. The trial court properly denied the defendant's motion for a continuance prior to the beginning of the trial, when it weighed the relevant factors in reaching its decision, and accordingly denied defense counsel's motion. Initially, the trial court asked defense counsel when he became aware of the incident. And his response was on March 21st, which was approximately two weeks prior to the commencement of trial. However, defense counsel stated that he was engaged in another matter, which he knew would not be proceeding on March 31st, which was still five days prior to the commencement of defendant's second trial. During that time, defense counsel stated that he had not investigated the matter, even though he was aware it chiefly involved the mother of the defendant's child, Charlene Parker. Additionally, defense counsel was requesting a continuance until the following Monday in order to investigate the incident. However, the only actions which chiefly occurred on that Friday were jury selection. Nothing would have precluded defense counsel from investigating the incident over the weekend and re-presenting Monday had some other information been found. Motions in limine were still pending, and opening statements had not been given in the trial. Counsel, I'm really interested about the jury instruction issue. Could you address that first for me? Absolutely. The trial court properly exercised its discretion in denying the defense counsel's request for a second-degree murder instruction based on an unreasonable belief in self-defense. The trial court relied chiefly on the People v. Anderson decision, in which it stated that in this case, defendant failed to present any evidence of the existence of an unreasonable belief in self-defense. But the judge saw a reason to give a self-defense instruction, the way I read it. Is that right? Absolutely. The trial court gave the self-defense instruction. So then the jury sits back there and says, they've won, we saw self-defense, he's innocent, or he's guilty or not guilty. There's no in-between the way I see it. Indeed. This was a case where the situation is black and white. In the Supreme Court's holding in lockets does not encompass a situation where the defendant presents absolutely no evidence of an unreasonable belief in self-defense. The defendant testified that he saw the gun that Ronald Lee possessed prior to the shooting. He described the gun as a revolver with a wooden handle. He said he saw it in Ronald Lee's waistband and he grabbed Ronald Lee's arm prior to shooting him to prevent him from aiming the weapon at him. This is not a situation in which any reasonable jury could have found, based on the defendant's testimony, that he possessed an unreasonable belief in self-defense. As such, there was no evidence presented of the mitigating factor and the jury instruction based on second-degree murder and an unreasonable belief in self-defense was properly denied by the trial court. Ms. Salinas, as to in Anderson, was it clear in Anderson whether the defendant made a request for such an instruction? He did. As a matter of fact, in Anderson, the defendant was presenting a simultaneous defense of insanity and self-defense. And contrary to defense counsel's argument, in Anderson, what the defendant stated was that he approached the second shooting victim. They struggled over a gun that was contained within a paper bag. And then he shot the second victim using the gun that was in the paper, or the first victim with the gun that was in the paper bag. So the trial court found, in Anderson, that because the defendant did not testify that there was an unreasonable belief based on him struggling with this weapon that was going to be used to possibly take his own life, there should not be a presentation of a second-degree murder instruction. In Anderson, it would have been voluntary manslaughter. But the defendant requested the second-degree murder jury instruction? In Anderson, yes. Thank you. I thought that was kind of unclear, actually, from my reading of Anderson. But going back, so you look at your brief, and while the defense relies on Lockett and since Lockett, Jeffries, which you have in your brief, Jeffries, but not for this proposition. And then they have Edmondson, Lockett, and Toney, all of which are from the First District in 2002, 2003, saying what I had mentioned before, Blackwater Law, if you have a self-defense instruction, then you must have a second-degree instruction. You don't discuss any of that. Now, again, why would you? I mean, it's hard to, I can understand why people leave them out because they're real clear. They say, this is reversible, like that. You do cite Jeffries, but in Jeffries, which is a 1995 case from our Supreme Court, they reiterated in footnote two, a self-defense and a voluntary manslaughter, now second-degree murder instruction, should be given when any evidence is presented showing the defendant's subjective belief that the use of force was necessary. So if you give self-defense, you must, must, always, always and forever, give second-degree if the defense asks for it. It's really a bright line, and I can't, no case is cited by the state or anybody else other than Anderson to say it's okay not to do that. So what are we to do? I believe that's chiefly because in Lockett, which is the case, the Supreme Court case which begins this whole discussion on how self-defense and second-degree murder are basically the two sides of the same coin, they cannot, and in Lockett, the language states that they cannot conceive of a situation in which you would give self-defense and deny the second-degree murder instruction, but we're maintaining that this is that situation. There is no evidence of an unreasonable belief presented in this case, much like Anderson, and the IPI has not been changed to state that when one does receive an instruction in self-defense in a murder case, that so such the second-degree murder instruction based on an unreasonable belief must also be given. Well, going back to Jeffries, which is where the language, I think, your theory of how this works, should work, comes from, Jeffries points out, right after the footnote I just read, that it's not the defendant's burden to show unreasonableness. That's where I think Judge Cannon was going wrong. She was saying, as you just said, there's been no testimony of unreasonable belief or unreasonable provocation. There is no real provocation here. It's just unreasonable belief. He said he saw the gun, he pulled the gun, and he fired it. If a jury believes him, he's certainly justified in shooting him. They don't. It's first-degree murder. That's exactly what Lockett was saying not to do, I'd suggest to you, because it's never the defense's burden to show it's unreasonable belief. It's not their, how could they possibly do that? I shot him, but I surely shouldn't have. That's not their burden, not since Reddick, anyway, which was in the 80s. So it's the defense, it's the state's burden upon them bringing up self-defense to rebut self-defense. It's your position that you rebutted self-defense. That's fine. However, the law, I don't think, could be clearer in this area, that you must, must always, always, always, always give a second-degree murder instruction if you're going to give a self-defense instruction. If we don't hold that, if we follow Anderson and open this up, then I suggest you have every judge looking at this and thinking, hmm, does this fit what I think as the gatekeeper? Does this meet my burden of saying self-defense? And clearly, Judge Cannon, this did not meet her burden to allow this to be a second-degree murder. And judges do that, and they do it all the time. That's a natural thing when you see dead bodies in front of you every day. But that's not, I suggest that's not the law, and that's not what the appellate court needs to do in terms of making this not just right, but straightforward and simple, directly. I suggest that the word should go out, as it has consistently since Lockett, you must give second-degree murder if you give a self-defense instruction, if they ask for it. It makes no sense to say otherwise, frankly. It's not really a question, it's just a fact. We've got three cases from this district in the early 2000s saying, don't do it, don't do it, don't do it. And when the judges do it, how can we write it? If you suggest to us how we can write it to save this case, and I don't know why we would, but if there is, we'd have to go against Tony Lockett and Edmondson, and against Jeffries and against Lockett to go with Joe Gordon. If you're going to go against five firmly established cases, Joe Gordon's a good guy to go with. But do you think how we should write that? It's because in Anderson, Justice Gordon presents the fact that there is at least, there is no question as to the unreasonableness of defendant's behavior, which is the question that is before the jury. Should they choose to believe that the defendant acted in self-defense, they must then determine whether that action was reasonable, resulting in a not guilty verdict, or unreasonable, resulting in a verdict of second-degree murder. Actually, he said it was error. Assuming he argued Wendell's was error, which clearly it was, it would be harmless error. The evidence was so strong. And I know I should not argue that this is harmless error here, right? I'm not asserting. Right? Well, in the alternative, should this court find that? It's not in your brief. This is, they're not asserting in their brief about reasonable doubt. And they're not. They're not saying he didn't do it. They said he did. Which is admirable, frankly. And you have advanced the idea that if Judge Gordon was wrong, it's harmless error, correct? I believe I did briefly mention harmless error in the people's brief, stating that should this court find that the jury instruction was improperly left off, that the error would be harmless in nature of the overwhelming evidence against defendant. Turning to the second issue, is to the evidentiary rulings and the improper construction on the cross-examinations of Ronald Lee, Donald Lee, primarily in this case. Defense suggests that Ronald was sanitized in the eyes of the jury. However, Ronald Lee's prior conviction for aggravated vehicular hijacking and possession of a controlled substance were properly put before the jury. Ronald Lee was presented as a convicted felon. The defense is arguing that the parole status was relevant to show that Ronald Lee had a bias as to whether or not it would be legal for him to possess a weapon at the time of the offense because it would have constituted a parole violation. So therefore, he had a greater motive to lie to the police about his possession of a weapon. However, the people maintain that it would have been illegal for Ronald Lee to possess a weapon on any occasion at that time. As a convicted felon, he would have been subject to an unlawful use of a weapon by a felon. And as a citizen, not a Chicago police officer, it would not have been legal for him to possess a weapon on the street at that time regardless. Additionally, Donald Lee, as to the nature of the improper denial of the impeachment on his alcohol use at the time of the offense, the impeachment was allowed to suggest that at the first trial, he said that he had three or four beverages to drink, and at this trial, he testified there were two. Beyond that, there was no need to continue into the specifics of how many beverages he had to drink. Donald Lee did not identify the defendant as the shooter in this case. He testified he saw a shooting, an individual shot his brother, but he did not testify that that individual was the defendant. And wouldn't the additional information about his possible state of intoxication have shed light on the credibility of his testimony? It was presented that he had been drinking prior to the incident, prior to his appearance on the scene. But as to the specific nature, it was also shown that he previously testified he had three or four, and on this occasion, one or two. So the impeachment was complete as to that. And the jury, it was probably before the jury that he had been drinking. There's a difference between drinking one or two and being totally blitzed, isn't it? Yes, there is a difference. However, he didn't testify that he was totally blitzed at the first trial either. Donald Lee was before the jury as having consumed alcohol on the date of the incident. Additionally, Donald Lee's drug addiction status was unclear, and the trial court did ask defense counsel for an offer of proof as to any testimony that was going to be presented to the jury as to Donald Lee's status as a drug addict. The trial court properly asked if there was any evidence that Donald Lee was a drug addict either at the time of the incident or now at the time of trial. That offer of proof was not offered by defense counsel other than to say that Donald Lee was incarcerated in May of 2007. However, there was no foundation laid as to the basis of that knowledge, or had Donald Lee actually denied it, what was going to be given as an offer of proof in order to impeach that statement. Therefore, the trial court properly curtailed any questioning as to Donald Lee's drug addiction status at the time of the offense or at the time of trial, which would have been relevant to his credibility at the time he was testifying. Turning to the third issue, which is the suggestion that the trial court operated improperly in interjecting sua sponte objections during the course of the trial. Not only did defendant fail to demonstrate how the conduct did summarily impact the jury's verdict in the light of the overwhelming evidence, however, he fails to acknowledge that the numerous objections and the denial of sidebar requests occurred over the span of a 10-day trial, five days of testimony, average of eight hours of testimony per day. Specifically, the instances pointed to by defense counsel in the interjection of the objections in the jury's presence and to the comments of the timeliness. Defendant would have you examine these comments in a vacuum. However, there were numerous issues as to the timing of the trial as relating to the jurors on the case. One of the jurors became sick during one of the days of trial, and testimony had to be ended early. The time when the trial court interrupted defense counsel's cross-examination of the it was by 15 that day, and the trial court had stated, we're not moving as quickly as I would have liked. Prior to the commencement of trial, the trial court stated that she thought the trial would take a sum total of four days due to a previous obligation of one of the jurors, who was not able to attend on the Wednesday morning because of an oncology appointment of her mother's. And a trip out of town that was planned for that Friday, the trial was interrupted in these blocks of time due to the previous obligations of the jurors, who repeated comments by the trial court as to the timing. And that situation had to do more thoroughly with giving the jury an overview as to the timing. And so I think your brief addresses that very well. Could you in three sentences, because I think Justice Quinn summarized pretty much my position, three sentences tell me why he's wrong, and what he summarized the law to be. Why would we follow the three, why should we discard the latest three cases, two Illinois Supreme Court cases, and follow Anderson? Because as of yet, Anderson has not been summarily overruled by saying the must must be followed. The IPA is not being rewritten to suggest that when self-defense is given in a murder case, second degree murder must also be given. Three sentences. Thank you. Then for these reasons and those contained in the people's brief, we ask that you affirm defendant's convictions for first degree murder and for the aggravated battery of a firearm. Thank you. Thank you. Counsel? May it please the Court, I have just one point on rebuttal. Harmless error cannot apply to denied jury instructions. Oh, it can. It's all time. Your Honor, the second district last year in People v. Bland stated, pointed out that where a court improperly denied a jury instruction, the harmless error test should not be given because one test is subsumed in the other. The question of whether a jury instruction could have been denied hinges on whether any juror could have found a specific, for example in this case, involuntary manslaughter or second degree. The same test applies to harmless error, whether any trier effect could have reached a different conclusion. Where one test is subsumed in the other, there should not, a differentiation should not be made. If that were true in every case where there was an instructional error, no matter how small it would be reversible automatically, it would rise to structural error and it certainly does not. Harmless error is the correct standard. They didn't argue it. It's not in their brief. It doesn't matter if they argue it. This is not a harmless error case. Not at all. Not even close. Thank you, Your Honors. Thank you. No questions? No questions? Thank you, Counsel. The Court will take